IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| HECTOR RODRIGUEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | NO. 4:22-CV-250-O |
| | § | |
| BOBBY LUMPKIN, DIRECTOR, | § | |
| TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Came on for consideration the petition of Hector Rodriguez under 28 U.S.C. § 2254 for writ of habeas corpus. The Court, having considered the petition, the response, the reply, the record, and applicable authorities, concludes that the petition should be **DENIED**.

**I.   BACKGROUND**

Petitioner is serving a sentence of life imprisonment imposed following his conviction for possession of a controlled substance with intent to deliver (namely cocaine, 4 grams or more but less than 200 grams), enhanced by prior felonies, in Cause No. 15627 in the 29th Judicial District Court, Palo Pinto County, Texas. ECF No. 16-36 at 99–102. His conviction was affirmed on appeal. *Rodriguez v. State*, No. 11-17-00214-CR, 2020 WL 1887716 (Tex. App.—Eastland Apr. 16, 2020, pet. ref'd). The Court of Criminal Appeals of Texas refused his petition for discretionary review. *Id.*

The state appellate court summarized the background facts as follows:

Texas Department of Public Safety Trooper Phillip McKenzie stopped a brown Toyota pickup on January 9, 2015. He testified that the pickup committed a traffic violation by pulling out in front of him at an intersection when the pickup had a stop sign. The pickup had an expired temporary license tag. [Petitioner's] wife, Diana Borrego, was the driver and [Petitioner] was a passenger in the front seat.

> The couple told Trooper McKenzie that [Petitioner] worked in the oilfield in West Texas and that West Texas was their destination. Trooper McKenzie believed that their story was suspicious because he did not see a hard hat or boots in the pickup. Additionally, Trooper McKenzie determined that both occupants had prior convictions for drug offenses.
>
> Because the pickup was registered to [Petitioner], Trooper McKenzie asked him for consent to search it. [Petitioner] gave his consent to Trooper McKenzie to search the pickup. Trooper McKenzie first found a "water pipe" or "small bong." He found this pipe on the passenger's side floorboard. Borrego claimed that the pipe belonged to her son. A search of a jacket that belonged to [Petitioner] revealed another pipe that appeared to have methamphetamine residue. Trooper McKenzie also found a small dietary supplement bottle in that jacket. A subsequent search of this bottle revealed the presence of 7.53 grams of cocaine.
>
> After searching [Petitioner's] jacket, Trooper McKenzie searched the console between the driver and passenger seats. There were two "Styrofoam" cups located in the console. Trooper McKenzie pulled the lid off one of the cups, and he observed a "small sandwich bag containing a white powdery substance." It was later determined that this bag contained 12.02 grams of cocaine. Trooper McKenzie arrested [Petitioner] and Borrego after finding the cocaine in the cup. Borrego claimed ownership of the cocaine inside of the pickup. However, she was unable to tell Trooper McKenzie that the cocaine was located inside the cup or how it was packaged when he asked her those questions.
>
> Trooper McKenzie also found a digital scale in the driver's side door, unused Ziploc bags, a grinder with cocaine residue, prescription medications for which neither [Petitioner] nor Borrego had a prescription, a bag of what appeared to be marihuana, and other pipes for using methamphetamine or crack cocaine. Trooper McKenzie testified that the amount of almost twenty grams of cocaine was beyond a "personal use amount." Trooper McKenzie testified that the amount of cocaine that he found would be an amount possessed by someone involved in drug trafficking. He also testified that baggies and digital scales like those found in [Petitioner's] pickup are used in the distribution of drugs.
>
> The State also offered the testimony of Texas Department of Public Safety Special Agent Steve Tuggle. He also confirmed that the amount of cocaine found in the pickup was "more than just a personal use amount." Special Agent Tuggle testified that a grinder and sifter like the one found in the pickup is used for "cutting" drugs for distribution and that baggies and digital scales are also used to package drugs for distribution.

2020 WL 1887716, at *1–*2.

Petitioner filed a state application for writ of habeas corpus, which was denied without written order. ECF No. 16-34. Petitioner timely filed his federal application. ECF No. 1.

## II.  GROUNDS OF THE PETITION

Petitioner alleges four grounds in support of his federal application for writ of habeas corpus:

> (1) Trial counsel was ineffective for:
>  (a) sleeping through portions of the trial;
>  (b) failing to obtain an interpreter for Petitioner's mother;
>  (c) failing to impeach a witness with Petitioner's bank records;
>  (d) failing to prepare a pretrial motion to suppress;
>  (e) failing to subpoena Petitioner's co-defendant;
>  (f) allowing the State to play the entire, unredacted video of the traffic stop;
>  (g) failing to conduct a meaningful investigation;
>  (h) failing to make necessary objections;
>  (i) conducting an inadequate *voir dire* examination; and
>  (j) failing to present a meaningful defense.
>
> (2) The traffic stop and interrogation, search, seizure, and arrest were illegal in violation of the Fourth Amendment.
>
> (3) The State prosecutor violated Petitioner's rights to due process by:
>  (a) allowing Trooper McKenzie to falsely testify that he found stolen clothing in the vehicle;
>  (b) making false statements during closing argument that Petitioner had been convicted of delivering drugs; and
>  (c) misleading the trial court by arguing that it did not have the burden to provide notice of his witnesses.
>
> (4) The state habeas proceeding violated Petitioner's due process rights because he was not provided any documents as required by law.

ECF No. 1 at 6–7; ECF No. 7.

## III.  STANDARDS OF REVIEW

### A.  Section 2254

A writ of habeas corpus on behalf of a person in custody under a state court judgment shall

not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the petitioner shows that the prior adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407–09; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244–46 (5th Cir. 2002)(*en banc*) (focus should be on the ultimate legal conclusion reached by the state court and not on whether that court considered and discussed every angle of the evidence). A determination of a factual issue made by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001). Absent express findings, a federal court may imply fact findings consistent with the state court's disposition. *Marshall v. Lonberger*, 459 U.S. 422, 433 (1983). Thus, when the Texas Court of Criminal Appeals denies relief without written order, such ruling is an adjudication on the merits that is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). The petitioner has the burden of rebutting the

presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Hill*, 210 F.3d at 486.

In making its review, the Court is limited to the record that was before the state court. 28 U.S.C. § 2254(d)(2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### B. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, the petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Missouri v. Frye*, 566 U.S. 133, 147 (2012). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697; *see also United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000)(*per curiam*). "The likelihood of a different result must be substantial, not just conceivable," *Harrington*, 562 U.S. at 112, and a petitioner must prove that counsel's errors "so *undermined* the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 686). Judicial scrutiny of this type of claim must be highly deferential and the petitioner must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Where, as here, the state court adjudicated the ineffective assistance claims on the merits, this Court must review Petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen*, 563 U.S. at 190. In such cases, the "pivotal question" for the

Court is not "whether defense counsel's performance fell below *Strickland's* standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101, 105. In other words, the Court must afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013)(quoting *Cullen*, 563 U.S. at 190); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

## IV. ANALYSIS

### A. Ineffective Assistance

In his first ground, Petitioner provides a laundry list of alleged deficiencies of his trial counsel. Petitioner raised these grounds in his state habeas application. ECF No. 16-36 at 8–9. His trial counsel filed an affidavit in response. *Id.* at 106–09. Having reviewed the record, the state court petition, and the affidavit of counsel, the trial court determined that counsel was not ineffective and that no relief should be granted. *Id.* at 110. The Court of Criminal Appeals denied the petition without written order. ECF No. 16-34. In addition, many of these grounds were discussed in the appellate opinion and found to be without merit. *Rodriguez*, 2020 WL 1887716, at \*4–\*9. Petitioner has not overcome the doubly deferential standard of review that applies. *Cullen*, 563 U.S. at 190. Respondent has adequately addressed Petitioner's allegations and the Court need not repeat the discussion here. ECF No. 15 at 12–20.

### B. Fourth Amendment

In his second ground, Petitioner alleges that the traffic stop and subsequent interrogation, search, seizure, and arrest violated his rights under the Fourth Amendment. ECF No. 1 at 6.

Petitioner raised this ground in his state habeas application. ECF No. 16-36 at 10. Because Petitioner had a full and fair opportunity to litigate this claim in state court, he cannot pursue it here. *Stone v. Powell*, 428 U.S. 465, 494 (1976). *See Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) ("an 'opportunity for full and fair litigation' [means] just that: 'an opportunity'").

### C.     Prosecutorial Misconduct

In his third ground, Petitioner alleges that the prosecutor engaged in misconduct in three respects: allowing false testimony, making a false argument, and saying the State did not have to produce a witness list and failing to disclose Tuggle as an expert witness. ECF No. 1 at 7. None of these claims has merit.

A prosecutor may not knowingly use false testimony or allow false testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150, 154 (1972). To obtain reversal of a conviction based on use of false testimony, a petitioner must show that (1) the testimony was actually false, (2) the testimony was material, and (3) the prosecution had knowledge that the testimony was false. *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996). That evidence is contradictory or inconsistent does not establish its falsity. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990). Here, Petitioner offers nothing more than unsubstantiated allegations; he has no proof that materially false testimony was knowingly offered by the prosecution. The state courts implicitly found that it was not. Petitioner has not met his burden of showing entitlement to relief.

As for the allegation that the prosecutor made an improper argument, Petitioner must show that such improper argument substantially affected his right to a fair trial. *Trottie v. Stephens*, 720 F.3d 231, 253 (5th Cir. 2013). The Court looks at the magnitude of the prejudicial effect of the

7

remarks, the efficacy of any cautionary instruction by the trial judge, and the strength of the evidence supporting the conviction. *Id.* The improper remarks must be so pronounced and persistent that it permeated the entire atmosphere at trial. *Id.* Here, Petitioner has not come close to showing that the "prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Such a conclusion could not be reached here, where the evidence of guilt was overwhelming.

Finally, the allegation regarding the witness list does not really make any sense. Petitioner says that the prosecutor's statements that the State did not have to produce a witness list and that it did not do so because it had no burden to do so were wrong and false because the State did produce a witness list. ECF No. 7 at 10. His complaint is that Tuggle was not identified as an expert and his counsel was not prepared to cross-examine him. *Id.* The record reflects, however, that Tuggle gave essentially the same testimony as McKenzie to the effect that the amount of cocaine found was more than would have been for personal use. ECF No. 16-14 at 124 (court acknowledging that the testimony might be a little repetitive, but the State had the burden of proof). The appellate court discussed the same issue and determined it was without merit. *Rodriguez*, 2020 WL 1887716, at *8–*10. Even if there were some constitutional error, and there was not, Petitioner has not shown that he was prejudiced.

### D.  State Habeas Proceedings

In his fourth ground, Petitioner alleges that he was denied the right to due process during the state habeas proceedings. What he is really complaining about, however, is not being provided copies of items that were filed, as ordered by the trial court or as required by state law. ECF No. 1

8

at 7. Infirmities in state habeas proceedings do not state a claim for federal relief. *Vail v. Procunier*, 747 F.2d 277, 277 (5th Cir. 1984). "An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself." *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995). Moreover, federal courts do not sit to review errors under state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

## V. CONCLUSION

For the reasons discussed herein, the Court **DENIES** the relief sought in the petition and any other document filed by Petitioner.[1]

Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 27th day of October 2022.

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that contained within Petitioner's reply is a motion to expand the record and engage in discovery. ECF No. 20 at 3–5. Petitioner is not entitled to such relief. *Shoop v. Twyford*, 142 S. Ct. 2037, 2044 (2022).